Doug ROY, Jr., etc., et al., Plaintiffs,

v.

VOLKSWAGENWERK AKTIENGE-SELLSCHAFT, A German Corporation, and Volkswagen of America, Inc., Defendants.

No. CV 83–5254–JWC.

United States District Court, C.D. California.

Jan. 4, 1985.

David M. Harney, James J. Pagliuso, Los Angeles, Cal., for plaintiffs.

Robert E. King, Bakersfield, Cal., Michael A. Zuk, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

CURTIS, District Judge.

This court has before it defendants' motion to set aside the jury's verdict in the above entitled case, awarding plaintiffs, collectively, the sum of $3,000,000.00.

In this products liability case, the plaintiffs have sued the defendants for the defective design of a 1958 Volkswagen. The claim arises from an accident which occurred in February 1982, in which a 1958 Volkswagen van being driven by the plaintiff, Doug Roy, Jr., turned over and caught fire, seriously injuring Doug Roy, III, and to some extent his mother, father and sister.

According to the evidence, the Roy family was on a trip from their California home to home of relatives in Texas, a trip requiring several days travel. Along the way some difficulty arose with respect to the fuel line. Whether it was because the line became clogged with dirt or for some other reason, insufficient fuel was reaching the engine to keep it running properly. In order to remedy this situation, Roy, Jr. removed the cap from the fuel fill pipe and inserted a rubber hose, surrounding it with rags and connecting the other end to the fuel pump, which apparently permitted the engine to perform satisfactorily.

While traveling on a two-lane highway at approximately 55 miles per hour, Roy made an abrupt turn to the left, causing the Volkswagen van to roll over, whereupon it caught fire causing the injuries alleged. This was indeed a tragic accident bringing an end to what had started out to be a happy family excursion. The record is replete with photographs of Roy, III, and the horribly disfiguring scars which his burns caused. It is one which indeed makes most difficult a dispassionate evaluation of the evidence upon a motion for a new trial, but after much careful consideration I can only conclude that the verdict is so contrary to common sense and the overwhelming weight of the evidence that I cannot in good conscience permit it to remain.

The principal thrust of plaintiffs' case is their contention that the Volkswagen van was defectively designed, in that it had a tendency to roll over in circumstances such as those involved in this case. In the light of the voluminous technical testimony which was received in this case, it appears that the tendency of any vehicle to roll over is the result of the interaction of several factors; such as, the weight of the vehicle, the width of the tread, the center of gravity, the speed of the vehicle, the angle of the turn, and the coefficient of friction between the tires and the pavement. The variation of any one of these factors materially affects the result. The experts fur-

ther agreed that any vehicle will roll over given the right circumstances. From this, one must conclude that the mere fact that a vehicle rolls over during an accident does not necessarily mean that it is defective, nor does it mean that because one vehicle may have a greater tendency to turn over than another vehicle that the former is defective. The issue then before the jury was, did the fact that the Volkswagen van rolled over under the circumstances presented in this case indicate that the design of the van was defective.

A definition of a defective design was given to the jury in the court's instruction which read as follows:

A product is defective in design if it fails to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner, or if there is a risk of danger inherent in the design which outweighs the benefits of that design.

The evidence is uncontested that this particular 1958 Volkswagen van performed no differently than that of any other Volkswagen van of the same vintage, or appreciably different from any other Volkswagen van manufactured thereafter.*

It is simply inconceivable that a vehicle of this type manufactured and sold by the millions over a period of twenty-five years, a vehicle which has met with phenomenol consumer acceptance can at this late date be found to have failed "to perform as safely as an ordinary consumer would expect."

The record is replete with video tape demonstrations which showed that the tendency of the Volkswagen van to roll is no greater than, if as great as, that of many American-made vans.

Admittedly, the center of gravity in a van is somewhat higher than that of a so-called "bug," but this was necessary in the design of the vehicle to accomplish the purposes for which it was manufactured, and the acceptance and use of such a vehicle throughout the world for twenty-five years demonstrates beyond a shadow of a doubt that its usefulness outweighs any slight risk of danger which it causes.

In my view, the verdict which finds the Volkswagen van defectively designed cannot be allowed to stand in the face of the overwhelming evidence to the contrary. Any risk of rolling over which may exist is inherent in the design and is necessary in order to enable the vehicle to perform its intended purpose. The design permits it to be handled as safely and in some instances more safely than other vehicles of similar design which have found universal acceptance in the marketplace even today. The Volkswagen design has remained virtually the same for approximately twenty-five years, during which time it has met with overwhelming consumer acceptance throughout the entire world. To find such a design defective defies common sense.

Another critical issue in this case concerns the circumstances causing the vehicle to roll. Plaintiffs contend that while traveling approximately 55 miles an hour, the driver turned abruptly to the left in order to avoid a dog, and that the vehicle started and ended its roll on the smooth pavement. In fact, the main burden of plaintiffs' contention is that a vehicle which will roll in an abrupt turn on a smooth pavement under these circumstances would be defective. The defendants, on the other hand, contend that the driver apparently fell asleep and permitted the van to gradually drift off to the right on to the improved shoulder and ultimately beyond on to the unimproved portion of the highway, and then upon suddenly awakening he turned abruptly to the left in an attempt to get back on the highway. In the process the front wheels dug deeply into the dirt, which ruts together with the edge of the pavement to cause the vehicle to trip. Even plaintiffs' experts have admitted that the fact that a vehicle

---

* Some claim was made that the swing axle which was later modified was a contributing factor, but the great weight of the evidence was to the contrary. Furthermore, it appears that the swing axle has been continued in use up until the present in some of the most expensive and well engineered cars on the market.

rolls after being tripped is no indication that the design of the vehicle is defective. It is therefore essential to plaintiffs' case that the evidence established that the roll commenced on the smooth pavement. On this issue the evidence overwhelmingly supports the defendants' theory. The pictures taken by the Chief of Police immediately after the accident clearly show the tracks made by the van, traveling precisely as defendants have contended. Although plaintiff speculated that these tracks could have been made by a passing vehicle attempting to avoid the burning van, such a theory is thoroughly inconsistent with the physical evidence. Plaintiff relies on the testimony of two eyewitnesses to support his theory. These witnesses testified that while traveling in the opposite direction some 2,000 feet from the point of the accident, they saw the van turn over and burst into flame while it was traveling on the paved portion of the highway. The accuracy of such testimony is open to question because of the distance from which they observed the accident, and the improbability of them making an accurate observation of such a minor detail when suddenly confronted with a shockingly dramatic, tragic event such as that which appeared before them. Furthermore, video tapes demonstrate clearly that because of the nature of the terrain they would have been unable to judge from their point of observation whether the van commenced its roll on the pavement or off on the shoulder. And, there was no physical evidence of any kind such as marks on the highway to support plaintiffs' theory.

I think one must conclude from the great weight of evidence in this case that the design of the Volkswagen van was not defective and that, in any event, the roll over here under the circumstances hereinabove outlined was not the result of a defective design.

Although the jury should have been aware of these facts and circumstances, they were obviously swayed by emotion and sympathy for the little boy, Roy, III, which was generated by the many graphic and explicit photographs depicting his origi-nal burns and the many operations which he was required to endure as well as those yet to come. It is my belief that the emotion which prevaded this case, and which makes this court's decision a most difficult one, overwhelmed the jury, obscuring the issue of liability. In my view, for these reasons to allow the verdict to stand would constitute a serious miscarriage of justice. The motion to set aside the verdict and for a new trial is hereby granted.